**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| MIRACULOUS Z.PART BIDCO INC. *d/b/a* MIRACULOUS CORP. and ZAG AMERICA, LLC,<br><br>               Plaintiffs,<br><br>   v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>               Defendants. | Case No. 26-cv-00141 |

**COMPLAINT**

Plaintiffs Miraculous Z.Part Bidco Inc. *d/b/a* Miraculous Corp. and ZAG America, LLC (collectively, "Miraculous" or "Plaintiffs") hereby bring the present action against the Partnerships and Unincorporated Associations Identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

## I.     JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over Miraculous' claims pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may exercise personal jurisdiction over Defendants because Defendants structure their business activities to target consumers in the United States, including Indiana, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Indiana residents by setting

1

up and operating e-commerce stores that target United States consumers; offer shipping to the United States, including Indiana; accept payment in U.S. dollars; and sell products using infringing and counterfeit versions of Miraculous' federally registered trademarks and/or unauthorized copies of Miraculous' federally registered copyrighted works, including the distinctive characters embodied therein (collectively, the "Unauthorized Products") to residents of Indiana. Each of the Defendants is committing tortious acts in Indiana, is engaging in interstate commerce, and has wrongfully caused Miraculous substantial injury in the state of Indiana.

## II.    INTRODUCTION

3.      Miraculous filed this case to prevent e-commerce store operators who trade upon Miraculous' reputation and goodwill from further selling and/or offering for sale Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Miraculous' intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their operation. Miraculous is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of its registered copyrighted works, as well as to protect consumers from purchasing Unauthorized Products over the Internet. Miraculous has been, and continues to be, irreparably damaged through consumer

2

confusion and dilution of its valuable trademarks and infringement of its copyrighted works because of Defendants' actions and therefore seeks injunctive and monetary relief.

### III.    THE PARTIES

4.      Plaintiff Miraculous Z.Part Bidco Inc. *d/b/a* Miraculous Corp. is a Delaware corporation having its principal place of business at 3002 Main Street, Santa Monica, CA 90405. Plaintiff ZAG America, LLC is a California limited liability company having its principal place of business at 3002 Main Street, Santa Monica, CA 90405. Plaintiffs own the trademarks and copyrighted works asserted herein.

5.       Miraculous is an independent, cutting-edge film, TV, and digital production studio specializing in world-class storytelling through animation, with a unique portfolio of classic stories, timeless values, and iconic characters and melodies. With offices in Paris, France and Los Angeles, California, Miraculous' compelling content reaches kids and families all over the world. Miraculous is also a leading marketer, licensor, and developer of innovative consumer entertainment products based on its acclaimed properties and content. One of Miraculous' most popular television series, *Miraculous: Tales of Ladybug & Cat Noir* (the "Miraculous Series"), is the subject of this action.

6.      The Miraculous Series follows the adventures of two Parisian high-school students, Marinette and Adrien, who have been chosen as superheroes: Ladybug and Cat Noir. Their mission is to keep Paris safe from evil villains while keeping their secret identities and living normal lives as high school kids. To date, the Miraculous Series has five seasons available to watch, and

Miraculous plans to develop additional seasons. Some of the characters and character names made famous by the Miraculous Series include, but are not limited to: [1]

| | | |
|---|---|---|
| **Marinette Dupain-Cheng / Ladybug** | | |
| **Adrien Agreste / Cat Noir** | | |
| **Gabriel Agreste / Monarch** | | |
| **Alya Césaire / Rena Rouge** | | |

[1] The characters contained within the table are not an exhaustive list of the characters embodied in Miraculous' copyrighted works. This table is included only to provide examples of the characters found on the infringing products offered for sale or sold by Defendants. Regardless of any changes in their design, each of these characters, among others contained within Miraculous' copyrighted works, have always maintained their distinctive qualities and unique elements of expression.

| | |
|---|---|
| **Chloé Bourgeois / Queen Bee** | |
| **Nathalie Sancoeur / Mayura** | |
| **Tikki, Kwami of Creation** | |
| **Plagg, Kwami of Destruction** | |
| **Duusu, Kwami of Emotion** | |



| | |
|---|---|
| **Nooroo, Kwami of Transmission** | |
| **Orikko, Kwami of Pretension** | |
| **Barkk, Kwami of Adoration** | |
| **Roaar, Kwami of Elation** | |

7.      The Miraculous Series has gained worldwide popularity and is available to stream throughout the world, including on the Netflix and Disney platforms. The Miraculous Series was ranked by IMDB amongst the Top 10 Best Animated Shows in the last 20 years.[2] With a massive fan base of young adult viewers, the Miraculous Series has become a digital planetary craze with millions of people subscribing to the official Miraculous Ladybug YouTube channel and the official Miraculous Ladybug & Cat Noir mobile game generating over 100 million downloads.

---

[2] https://screenrant.com/best-animated-kids-shows-of-last-20-years-imdb/

8.      Miraculous has also received many awards throughout the world for the Miraculous Series, including products related thereto. These awards include the 2018 Teen Choice Award for Choice Animated Series and the 2020 Nickelodeon Kids Choice Awards, Mexico for Favorite Animated Series. The Miraculous brand was also awarded the Brazilian Toy Magazine's Awards for Best Brand of 2016 and Best National Toy for 2016, 2017, and 2018; the UK Licensing Awards for Best Children's or Tween Licensed Property and Best Licensed Children's Apparel Range for 2018; and the Bologna Licensing Trade Fair's 2019 Best Pre-School Licensing Project Award.

9.      Before Defendants' acts described herein, Miraculous launched the Miraculous Series and its related line of products. Miraculous has also registered a multitude of works related to the Miraculous Series and the characters embodied therein with the United States Copyright Office (the "Miraculous Copyrighted Works").

10.      The Miraculous Copyrighted Works are registered with the United States Copyright Office. True and correct copies of the records from the U.S. Copyright Office website for the Miraculous Copyrighted Works are attached hereto as **<u>Exhibit 1</u>**. The Miraculous Copyrighted Works embody the distinctive characters found in paragraph 6 above.

11.      Among the exclusive rights granted to Miraculous under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Miraculous Copyrighted Works to the public. Since first publication, the Miraculous Copyrighted Works, and derivative works thereof, have been used on Miraculous' products and are featured on Miraculous' official website, www.zag-store.com.

12.      Miraculous markets and sells a variety of products stemming from the Miraculous Series, including video games; clothing, such as scarves, shirts, sweatshirts, and costumes; jewelry resembling that worn by the characters in the Miraculous Series; bags; face masks; cell phone

covers; household items such as water pens, blankets, and pillows; party supplies; and other collectibles such as plush toys, comics, and toys (collectively, "Miraculous Products").

13. Miraculous Products have become enormously popular and even iconic, driven by Miraculous' quality standards and innovative designs. Among the purchasing public, Miraculous Products are instantly recognizable as such. The Miraculous brand has become a global success and Miraculous Products are among the most recognizable in the world. Miraculous Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Indiana such as Target, Kohl's, and Walmart; through Miraculous' official Amazon store; and through the official zag-store.com website. Miraculous Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with Miraculous and the Miraculous brand.

14. Miraculous has continuously used the Miraculous trademark, and other trademarks, for many years and has continuously sold products under its trademarks (collectively, the "Miraculous Trademarks"). As a result of this long-standing use, strong common law trademark rights have amassed in the Miraculous Trademarks. Miraculous' use of the marks has also built substantial goodwill in the Miraculous Trademarks. The Miraculous Trademarks are famous marks and valuable assets of Miraculous. Miraculous Products also typically include at least one of the Miraculous Trademarks and/or Miraculous Copyrighted Works.

15. The Miraculous Trademarks are registered with the United States Patent and Trademark Office and are included below.

| Registration Number | Trademark | Registration Date | Goods and Services |
|---|---|---|---|
| 5,402,278 | MIRACULOUS | Feb. 13, 2018 | For: Digital media, namely, DVD's, and pre-recorded electronic media featuring music, motion pictures, and television |

| | | | |
|---|---|---|---|
| | | | programs featuring family and kids entertainment content; ear buds, audio accessories namely, wireless and wired headsets; computer accessories, namely, computer, tablet and mobile device covers and cases; downloadable media, namely, downloadable audiovisual recordings featuring family and kids entertainment content; electronic publications, namely, downloadable electronic materials in the nature of cartoons in class 009.<br><br>For: Entertainment services, namely, television programs in the field of family and kids entertainment, animated cartoons, a continuing animated episode broadcast over television, satellite, audio and video media, ongoing series featuring family and kids entertainment content provided through cable television, satellite, the internet and webcasts, providing ongoing webisodes featuring family and kids entertainment content via a global computer network in class 041. |
| 5,566,252 | MIRACULOUS | Sep. 18, 2018 | For: Computer software, namely, mobile application software and mobile game software for games for kids based on animated television series in class 009. |
| 5,643,890 | MIRACULOUS | Jan. 01, 2019 | For: Printed material, namely, books, comics, serial publications in the form of magazines, comic books, graphic novels and manga featuring scenes and characters based on a television series; sketchbooks; notebooks; blank journals; sticker albums; sticker |

9

| | | | packs; stationery, drawing paper; construction paper; pens; drawing pencils; writing utensils; trading cards and posters in class 016.<br><br>For: Toys, namely, action figures and accessories therefor; action role play toys in the nature of play sets for children, namely, gear and accessories used by characters in television series, namely, toy weapons, toy jewelry, and children's dress-up accessories; toy vehicles; dolls; role play costumes, namely, costume masks; collector dolls; children's multiple activity toys; decorative room toys, namely, playing card game accessories, namely, mats for use in connection with playing card games; tabletop games; puzzles; card games; plush toys; simulated food toys; balloons; paper party favors in class 028. |
|---|---|---|---|
| 5,671,603 | MIRACULOUS | Feb. 05, 2019 | For: Clothing, namely, t-shirts, sweatshirts, sweaters, jackets, sleepwear, dresses, skirts, leggings and tights; outerwear, namely, coats; Halloween costumes, children's costumes for use in dress up play, all tied to, and offered to promote, a children's television program in class 025. |
| 5,697,575 | MIRACULOUS | Mar. 12, 2019 | For: Electronic publications, namely, downloadable electronic materials in the nature of books, magazines, newsletters, and periodicals all featuring family and kids entertainment content in class 009. |
| 6,222,079 | MIRACULOUS | Dec. 15, 2020 | For: Books, namely, novels, a series of fiction chapter books, namely, novels and books; story |

10

| | | | |
|---|---|---|---|
| | | | books; picture books; novelty books for children featuring characters from televisions series in class 016. |
| 6,428,485 | MIRACULOUS | Jul. 20, 2021 | For: Clothing, namely, fashion tops; outerwear, namely, rain wear; clothing accessories, namely, hats, socks, scarves; winter wear, namely, gloves; children's footwear, namely, athletic shoes, slippers, all tied to, and offered to promote, a children's television program in class 025. |
| 6,996,892 | MIRACULOUS | Mar. 07, 2023 | For: Downloadable musical sound recordings, walkie talkies, digital cameras; wireless and corded speakers; electronic game software for handheld electronic devices in class 009.<br><br>For: Provision of continuing programs, segments, movies, full length motion pictures, motion picture shorts and shows featuring family and kids entertainment content delivered in theatres and by television, satellite, and the internet, and provision of non-downloadable films and movies via a video-on-demand service; production of musical sound recording in class 041. |
| 7,429,596 | MIRACULOUS | Jun. 25, 2024 | For: Pillows, namely, decorative pillows and cushions, novelty pillows, pillows featuring scenes and characters based on a television series in class 020.<br><br>For: Bedding sets consisting of bedspreads, sheets, comforters, |

| | | | pillow cases; bedspreads; bed sheets, children's bed sheets, fitted bed sheets, sheets featuring scenes and characters based on a television series; blankets, namely, blanket throws, bed blankets, children's blankets, blankets featuring scenes and characters based on a television series; comforters; pillow cases, pillow covers, pillow shams, pillow cases featuring scenes and characters based on a television series; towels, namely, bath towels, children's towels, towels made of textile materials, beach towels, towels featuring scenes and characters based on a television series; shower curtains, shower curtains featuring scenes and characters based on a television series in class 024. For: Bath mats, namely, textile bath mats, fabric bath mats, non-slip mats for baths, bath mats featuring scenes and characters based on a television series in class 027. |
|---|---|---|---|
| 6,231,925 | MIRACULOUS CRUSH | Dec. 29, 2020 | For: Downloadable computer application software for mobile phones, portable media players, handheld computers, tablets, namely, mobile application software featuring kids' games for use on mobile devices; downloadable electronic game software for handheld electronic devices; interactive downloadable video game programs and downloadable computer game programs; computer software, namely, downloadable mobile application software and |

| | | | |
|---|---|---|---|
| | | | downloadable mobile game software for mobile phones, portable media players, handheld computers, tablets, namely, software for games for kids based on animated television series in class 009. |
| 7,075,422 | MIRACULOUS LADYBUG | Jun. 06, 2023 | For: Downloadable computer software, namely, mobile application software featuring kids' games for use on mobile devices; downloadable electronic game software for handheld electronic devices in class 009. |
| 7,215,442 | | Nov. 14, 2023 | For: Video films, namely DVDs, pre-recorded video cassettes, downloadable films and movies featuring Animated series or feature film for children; recorded computer game programs; exposed camera films, pre-recorded compact disks featuring audio version of animated series or movies or soundtrack; sound recording media, namely, pre-recorded CDs featuring audio version of animated series or movies or soundtrack ; optical lenses; Downloadable entertainment software for interactive games based on an animated series or feature film; pre-recorded videotapes featuring interactive games based on an animated series or feature film; animated films; Recorded computer game software, namely, computer game programs recorded on tapes being software; video printers; optical fibers; digital video disk recorders; blank diskettes; digital recording media, namely, digital media in the nature of pre-recorded video cassettes, digital video discs featuring |

13

| | | | |
|---|---|---|---|
| | | | Animated series or feature film; Prerecorded CDs featuring audio and video in the field of Animated series or feature film; optical cables; Prerecorded interactive entertainment computer software for video games; Prerecorded videotapes featuring Animated series or feature film; Prerecorded sound recording disks featuring audio version of animated series or movies or soundtrack; digital sensors for detecting motion; printed circuits for video modules; Prerecorded audio cassettes featuring audio version of animated series or movies or soundtrack; Prerecorded compact disks featuring audio and video in the field of Animated series, feature film or soundtrack; Sensitized microfilms that are exposed; blank optical disks; optical compact disks featuring animated series or feature film; digital plotters; recorded computer programs for video game programs; Downloadable interactive entertainment software for personal computers for interactive games based on an animated series or feature film; digital boards, namely, digital boards giving access to games, interactive stories or videos in class 009.<br><br>For: Checkers being games; teddy bears; miniatures for games miniature action figures, toy model vehicles for use with table top hobby games in the nature of wild life and fantasy; ice skates; dolls; play balloons; sailboards; scooters being toys; roller skates; jigsaw |

| | | | |
|---|---|---|---|
| | | | puzzles; dice; table-top games; roller skis; miniature toy airplanes, toys, namely, stuffed toys, miniatures of animals; board games; chips and dice being game materials; figurines being toys in the nature of modeled plastic toy figurines; toys for pets; miniature cars being toys; games, namely, board games, card games; ride-on toy vehicles; apparatus for games, namely, electronic game playing apparatus for action type target games; controllers for game consoles; children's driving toy vehicles namely, rideable toy vehicles; skateboards; chess games; Korean dominos; Glopae; arcade video game machines; children's riding vehicles namely, rideable toy vehicles; toy models; tennis rackets; automatic mahjong tables; surfboards; electronic hand-held game units; electronic games, namely arcade-type electronic video games; play costumes for children namely, costume masks and suits; building blocks being toys; costume masks; snowshoes; play balls and balls for games; dominos; skis in class 028.<br><br>For: Video films, namely DVDs, pre-recorded video cassettes, downloadable films and movies featuring Animated series or feature film for children; recorded computer game programs; exposed camera films, pre-recorded compact disks featuring audio version of animated series or movies or soundtrack; sound recording media, namely, pre-recorded CDs featuring audio version of animated series or |

15

| | | | |
|---|---|---|---|
| | | | movies or soundtrack ; optical lenses; Downloadable entertainment software for interactive games based on an animated series or feature film; pre-recorded videotapes featuring interactive games based on an animated series or feature film; downloadable animated films; Recorded computer game software, namely, computer game programs recorded on tapes being software; video printers; optical fibers; digital video disk recorders; blank diskettes; digital recording media, namely, digital media in the nature of pre-recorded video cassettes, digital video discs featuring Animated series or feature film; Prerecorded CDs featuring audio and video in the field of Animated series or feature film; optical cables; Prerecorded interactive entertainment computer software for video games; Prerecorded videotapes featuring Animated series or feature film; Prerecorded sound recording disks featuring audio version of animated series or movies or soundtrack; digital sensors for detecting motion; printed circuits for video modules; Prerecorded audio cassettes featuring audio version of animated series or movies or soundtrack; Prerecorded compact disks featuring audio and video in the field of Animated series, feature film or soundtrack; Sensitized microfilms that are exposed; blank optical disks; optical compact disks featuring animated series or feature film; digital plotters; recorded computer programs for video game programs; Downloadable |

16

| | | | |
|---|---|---|---|
| | | | interactive entertainment software for personal computers for interactive games based on an animated series or feature film; digital boards, namely, digital boards giving access to games, interactive stories or videos in class 038. |
| | | | For: Radio entertainment production; entertainment services provided by performing artists, namely, live entertainment performances by artists in the nature of theater play or musical show for others; development and production of radio and television entertainment programs; production of sound recordings; organization of seminars in the field of Animated series, wild life protection and gaming; conducting of conventions in the field of animated series, wild life protection and gaming; organization and conducting of colloquiums, conferences and congresses in the field of animated series, wild life protection and gaming; rental of sound recordings, rental of videotapes, of digital video discs, rental of motion pictures; rental of video discs; production of music; cinematographic entertainment services, namely cinematographic adaptation and editing, line production of feature film; organization and conducting of training workshops in the field of animated series creation, wild life protection and gaming; horse competition namely, horse showing; animated musical entertainment services, namely, |

| | | | |
|---|---|---|---|
| | | | animation production services; information with respect to entertainment; rental of scenery for television and motion pictures; editing of radio and television programs, of audiovisual and multimedia programs in the nature of image and sound editing; seminars on education in the field of production of animated series and protection of wild life; music hall services namely, providing music halls; entertainment services in the nature of motion pictures, namely, line production of motion picture and publishing; publication of texts, other than publicity texts ; rental of video recorders; television entertainment in the nature of films, television series, cartoons, documentaries, namely, an ongoing series featuring animation provided through cable television and on demand television; film production; organization of exhibitions for cultural or educational purposes; publication of texts other than advertising texts; conducting of workshops and seminars on the appreciation of artistic works; Educational services, namely, conducting classes, seminars, conferences, workshops, field trips in the field of animated series creation and wild life protection; recording studio services, studies of artistic and particularly musical projects, namely, online classes in the field of art and music; production of films for television and cinema; entertainment information services; entertainment services provided by musicians, namely musical composition for others and |

| | | | production of musical sound recordings, entertainment services in the nature of presenting live musical performances; multimedia publishing of printed matter, namely, book publishing; organization of training courses and professional workshops in the field of animated series creation, wild life protection and gaming; organization of conferences in the field of wild life protection and Animated Series creation, organization and conducting of colloquiums, conferences and congresses in the field of animated series, wild life protection and gaming; training, namely,training to wild life protection and animated series creation;; teaching in the nature of teaching and elementary schools; music publishing, publishing of sound recordings, videograms, audio and video cassettes, compact discs, CD-ROMs, digital video discs and any sound, data and image recording media; organization of balls; rental of compact discs; rental of phonograph recordings; presentation of live performances, theater and music-hall performances all of the foregoing in the nature of cultural shows, live musical and dance performances, organization of shows being impresario services namely, the organization of cultural shows, entertainment in the nature of ongoing multiple part television program in the field of variety; organization of galas in the nature of live musical performances, social entertainment events, charity for wild life protection, presentation of an animated series; |
|---|---|---|---|

19

| | | | |
|---|---|---|---|
| | | | conference services, namely, conducting educational conferences in the field of wild life protection and animated series; rental of sound and video recordings; organization of business conferences in the field of Animated series or feature film; rental of video equipment; videotape film production; providing nondownloadable television programs via video-on-demand transmission services; rental of audio discs; editing of video tapes, films or any other media in the nature of editing of books, series, cartoons, editing of radio and television programs; organization and conducting of colloquiums in the field of wild life protection and animated series, Television show production; rental of video screens; organization of competitions relating to education or entertainment, namely, competition on knowledge regarding wild life and wild life protection]; organization and follow-up in the nature of online or real classes of training workshops in the field of wild life protection and creation of animated series; music entertainment services, namely, entertainment services in the nature of live musical performances; entertainment information; organization of games; editing, namely, editing of books, video and music; entertainment services by means of cinematographic films, namely, displaying a series of films]; musical entertainment services, namely, entertainment services in the nature of live musical performances; concerts given by |

| | | | musical vocal groups being entertainment services; artistic services provided by musicians, namely musical composition for others and production of musical sound recordings, entertainment services in the nature of presenting live musical performances; orchestra services; recording studio, film production, video production and television production services namely, production of television shows in class 041. |
| --- | --- | --- | --- |

16.     The U.S. registrations for the Miraculous Trademarks are valid, subsisting, and in full force and effect, and registration No. 5,402,278 is incontestable. The registrations for the Miraculous Trademarks constitute *prima facie* evidence of their validity and of Miraculous' exclusive right to use the Miraculous Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for the Miraculous Trademarks are attached hereto as **Exhibit 2**.

17.     The Miraculous Trademarks are exclusive to Miraculous and are displayed extensively on Miraculous Products and in marketing and promotional materials. The Miraculous Trademarks are also distinctive when applied to Miraculous Products, signifying to the purchaser that the products come from Miraculous and are manufactured to Miraculous' quality standards. Whether Miraculous manufactures the products itself or contracts with others to do so, Miraculous has ensured that its products bearing the Miraculous Trademarks are manufactured to the highest quality standards.

18.     The Miraculous Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1) and have been continuously used and never abandoned. The success of the Miraculous Series, in addition to the marketing of Miraculous Products, has enabled the Miraculous brand to

21

achieve widespread recognition and fame and has made the Miraculous Trademarks some of the most well-known marks in the entertainment industry. The widespread fame, outstanding reputation, and significant goodwill associated with the Miraculous brand have made the Miraculous Trademarks valuable assets of Miraculous.

19.     Products bearing the Miraculous Trademarks have been the subject of substantial and continuous marketing and promotion by Miraculous. Miraculous has marketed and promoted, and continues to market and promote, the Miraculous Trademarks in the industry and to consumers through authorized retailers in Indiana such as Target, Kohls, and Walmart; through Miraculous' official Amazon store; and through the official zag-store.com website.

20.     Miraculous has expended substantial time, money, and other resources advertising, promoting, and marketing Miraculous Products. Miraculous Products have also been the subject of extensive unsolicited publicity due to the longstanding success of the Miraculous brand. As a result, products bearing the Miraculous Trademarks are widely recognized and exclusively associated by consumers as being high-quality products sourced from Miraculous or Miraculous' licensees. The Miraculous Trademarks have achieved tremendous fame and recognition, adding to the inherent distinctiveness of the marks. As such, the goodwill associated with the Miraculous Trademarks is of immeasurable value to Miraculous.

21.     Defendants are unknown individuals and business entities who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Miraculous. On information and belief, Defendants reside and/or operate in foreign jurisdictions and redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rules of Civil Procedure 17(b).

22.     On information and belief, Defendants operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Miraculous to learn Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Miraculous will take appropriate steps to amend the Complaint.

## IV.     DEFENDANTS' UNLAWFUL CONDUCT

23.     The success of the Miraculous Series has resulted in significant counterfeiting of the Miraculous Trademarks and infringement of the Miraculous Copyrighted Works. Because of this, Miraculous has implemented a brand protection program by investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Miraculous has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like AliExpress.com ("AliExpress"), Amazon.com, Inc. ("Amazon"), Dhgate.com ("DHGate"), Etsy, Inc. ("Etsy"), Roadget Business PTE. Ltd. ("SHEIN"), WhaleCo, Inc. ("Temu"), and Walmart, Inc. ("Walmart"), including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most infringing products now come through international mail and express courier services because of increased sales from foreign online infringers. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 3**).

24.     Because the infringing products sold by offshore online infringers do not enter normal retail distribution channels, the US economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020. *Id.* When accounting for lost jobs from

suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of infringing products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. *Id.* Additionally, it is estimated that the importation of infringing goods cost the United States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id.*

25.     Furthermore, online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 5** at p. 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of

[infringing products] and [infringers]." **Exhibit 4** at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the infringer] to reappear under a new false name and address in short order." *Id.* at p. 161.

26.     Defendants have targeted sales to Indiana residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases; offer shipping to the United States, including Indiana; accept payment in U.S. dollars; and sell Unauthorized Products to residents of Indiana.

27.     Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via numerous methods, including credit cards, AliPay, Amazon Pay, PayPal, and/or Stripe. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Miraculous has not licensed or authorized Defendants to use any of the Miraculous Trademarks and/or to copy or distribute the Miraculous Copyrighted Works, and none of the Defendants are authorized retailers of Miraculous Products.

28.     Many Defendants also deceive unknowing consumers by using the Miraculous Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract consumers using search engines to find websites relevant to Miraculous Products. Other e-commerce stores operating under the Seller Aliases omit using the Miraculous Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Miraculous Products.

29.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

30.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

31.     Defendants are collectively causing harm to Miraculous' goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes collective harm to Miraculous in a way that individual actions, occurring alone, might not.

32.     E-commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by brand owners. Websites like sellerdefense.cn also tip off e-commerce store operators like Defendants of new intellectual property infringement lawsuits filed by brand owners, such as Miraculous, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

33.　Infringers, such as Defendants, typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Miraculous' enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Miraculous.

34.　Defendants are working to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Miraculous, have knowingly and willfully used, and continue to use, the Miraculous Trademarks and/or copies of the Miraculous Copyrighted Works in connection with the advertisement, distribution, offering for sale, and/or sale of Unauthorized Products into the United States and Indiana over the Internet.

35.　Defendants' unauthorized use of the Miraculous Trademarks and/or Miraculous Copyrighted Works in connection with the advertising, distribution, offering for sale, and/or sale of Unauthorized Products into the United States, including Indiana, is likely to cause, and has caused, confusion, mistake, and deception by and among consumers and is irreparably harming Miraculous.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

36.　Miraculous hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

37.　This is a trademark infringement action against certain Defendants[3] based on their unauthorized use in commerce of counterfeit imitations of the Miraculous Trademarks in

---

[3] Count I applies to all Defendants who infringed the Miraculous Trademarks, as outlined in Schedule A attached hereto.

connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Miraculous Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Miraculous Products offered, sold, or marketed under the Miraculous Trademarks.

38.     Certain Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and/or advertising products using counterfeit reproductions of the Miraculous Trademarks without Miraculous' permission.

39.     Miraculous owns the Miraculous Trademarks. Miraculous' United States registrations for the Miraculous Trademarks are in full force and effect. Upon information and belief, certain Defendants have knowledge of Miraculous' rights in the Miraculous Trademarks and are willfully infringing and intentionally using infringing and counterfeit versions of the Miraculous Trademarks. Those Defendants' willful, intentional, and unauthorized use of the Miraculous Trademarks is likely to cause, and is causing, confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

40.     Certain Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

41.     Miraculous has no adequate remedy at law, and if certain Defendants' actions are not enjoined, Miraculous will continue to suffer irreparable harm to its reputation and the goodwill of the Miraculous Trademarks.

42.     The injuries and damages sustained by Miraculous have been directly and proximately caused by certain Defendants' wrongful reproduction, use of advertisement, promotion, offering to sell, and/or sale of Unauthorized Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

43.     Miraculous hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

44.     Certain Defendants'[4] promotion, marketing, offering for sale, and/or sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Miraculous or the origin, sponsorship, or approval of the Unauthorized Products by Miraculous.

45.     By using the Miraculous Trademarks in connection with the offering for sale and/or sale of Unauthorized Products, certain Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

46.     Certain Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

47.     Miraculous has no adequate remedy at law and will continue to suffer irreparable harm to its reputation and the associated goodwill of the Miraculous brand if certain Defendants' actions are not enjoined.

**COUNT III**
**COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT**
**REGISTRATIONS (17 U.S.C. §§ 106 and 501)**

48.     Miraculous hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

---

[4] Count II applies to all Defendants who infringed the Miraculous Trademarks, as outlined in Schedule A attached hereto.

49.     The Miraculous Copyrighted Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq.*

50.     Miraculous owns the Miraculous Copyrighted Works. Miraculous has complied with the registration requirements of 17 U.S.C. § 411(a) for the Miraculous Copyrighted Works. The Miraculous Copyrighted Works are protected by copyright registration numbers which were duly issued to Miraculous by the United States Copyright Office. At all relevant times, Miraculous has been, and still is, the owner of all rights, title, and interest in the Miraculous Copyrighted Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

51.     The Miraculous Copyrighted Works are published on the internet and available to Defendants online. As such, Defendants had access to the Miraculous Copyrighted Works via the internet.

52.     Without authorization from Miraculous, or any right under the law, certain Defendants[5] have deliberately copied, displayed, distributed, reproduced, and/or made derivative works incorporating the Miraculous Copyrighted Works on e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized Products. Certain Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Miraculous Copyrighted Works. Such conduct infringes and continues to infringe the Miraculous Copyrighted Works in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

53.     Certain Defendants reap the benefits of the unauthorized copying and distribution of the Miraculous Copyrighted Works in the form of revenue and other profits that are driven by the sale of Unauthorized Products.

---

[5] Count III applies to all Defendants who infringed the Miraculous Copyrighted Works, as outlined in Schedule A attached hereto.

54.   Certain Defendants have unlawfully appropriated Miraculous' protectable expression by taking material of substance and value and creating Unauthorized Products that capture the total concept and feel of the Miraculous Copyrighted Works, including the distinctive characters embodied therein.

55.   On information and belief, the certain Defendants' infringement has been willful, intentional, purposeful, and in disregard of and with indifference to Miraculous' rights.

56.   Certain Defendants, by their actions, have damaged Miraculous in an amount to be determined at trial.

57.   Certain Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Miraculous great and irreparable injury that cannot fully be compensated or measured in money. Miraculous has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Miraculous is entitled to a preliminary and permanent injunction prohibiting further infringement of the Miraculous Copyrighted Works.

### PRAYER FOR RELIEF

WHEREFORE, Miraculous prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the Miraculous Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a Miraculous Product or is not authorized by Miraculous to be sold in connection with the Miraculous Trademarks;

31

b. reproducing, distributing copies of, making derivative works of, or publicly displaying the Miraculous Copyrighted Works in any manner without the express authorization of Miraculous;

c. passing off, inducing, or enabling others to sell or pass off any products as Miraculous Products or any other product produced by Miraculous, that is not Miraculous' or not produced under the authorization, control, or supervision of Miraculous and approved by Miraculous for sale under the Miraculous Trademarks and Miraculous or Miraculous Copyrighted Works;

d. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or supervision of Miraculous, or are sponsored by, approved by, or otherwise connected with Miraculous;

e. further infringing the Miraculous Trademarks and/or Miraculous Copyrighted Works and damaging Miraculous' goodwill; and

f. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Miraculous, nor authorized by Miraculous to be sold or offered for sale, and which bear any of the Miraculous Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof and/or which bear the Miraculous Copyrighted Works;

2) Entry of an Order that, upon Miraculous' request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms like AliExpress, Amazon, DHGate, Etsy, SHEIN, Temu, and Walmart, shall disable and cease

displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Miraculous Trademarks and/or Miraculous Copyrighted Works;

3) That certain Defendants account for and pay to Miraculous all profits realized by those Defendants by reason of those Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Miraculous Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Miraculous be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Miraculous Trademarks;

5) As a direct and proximate result of certain Defendants' infringement of the Miraculous Copyrighted Works, Miraculous is entitled to damages as well as those Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6) Alternatively, and at Miraculous' election prior to any final judgment being entered, Miraculous is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

7) Miraculous is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a); and

8) Award any and all other relief that this Court deems just and proper.

Dated this 27th day of March 2026.        Respectfully submitted,


                                      /s/ Martin F. Trainor
                                        Martin F. Trainor
Sydney Fenton
Alexander Whang
TME Law, P.C.
10 S. Riverside Plaza
Suite 875
Chicago, Illinois 60606
708.475.1127
martin@tme-law.com
sydney@tme-law.com
alexander@tme-law.com

*Counsel for Plaintiffs Miraculous Z.Part Bidco Inc.*
*d/b/a Miraculous Corp. and ZAG America, LLC*

34